**SECOND DIVISION**
**MILLER, P. J.,**
**RICKMAN and REESE, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 10, 2020**

# In the Court of Appeals of Georgia

A19A1870. NUNEZ-MENDOZA v. THE STATE.

RICKMAN, Judge.

Following a stipulated bench trial, Victor Nunez-Mendoza was convicted on one count of trafficking in methamphetamine.[1] Prior to trial, Nunez-Mendoza filed a motion to suppress physical evidence seized from his vehicle, but the trial court denied his motion. He asserts on appeal that the trial court erred in denying the motion to suppress because (1) the court erroneously held that Nunez-Mendoza was placed in investigative detention and not arrested at the time he was stopped, and the

---

[1] Nunez-Mendoza was also charged with and convicted on one count of possessing methamphetamine with intent to distribute in violation of OCGA § 16-13-30 (b); that count, however, merged into his trafficking conviction for sentencing purposes. See OCGA § 16-1-7.

investigators lacked probable cause to arrest; and (2) the subsequent search of his vehicle was unlawful. We find no error and affirm.

> On appeal from a motion to suppress, the evidence is viewed in a light most favorable to upholding the trial court's judgment. The credibility of witnesses and the weight accorded their testimony rest with the trier of fact. Thus, the trial court's findings on disputed facts and credibility must be accepted unless clearly erroneous.

*Williams v. State*, 293 Ga. App. 842, 842-843 (668 SE2d 825) (2008).

The facts as set forth by the trial court after conducting an evidentiary hearing on Nunez-Mendoza's motion to suppress are as follows:

> On June 11, 2015, [an investigator] with the Gwinnett County Sheriff's Office came into contact with a confidential source while investigating another case. Upon receiving a tip that the confidential source was involved in the sale of methamphetamine, investigators questioned her. During said questioning, the confidential source informed investigators about an Hispanic male known as "Manuel," whom she identified as a supplier of methamphetamine in Hall County. [The Gwinnett County investigator] had never met or used the confidential source before June 11, 2015.

> On that same day, [the Gwinnett County investigator] contacted [an investigator] with the Hall County Sheriff's Office regarding the information about "Manuel." He and [a second investigator], also with

2

the Gwinnett County Sheriff's Office, had the confidential source call "Manuel" and request four ounces of methamphetamine while the investigators listened. A price was negotiated and "Manuel" agreed to deliver the methamphetamine to a house on Williamsport Drive in Hall County. The confidential source informed investigators that "Manuel" drove a black Honda and a silver Expedition.

[The Hall County investigator] met the Gwinnett County investigators and the confidential source at a gas station near the house on Williamsport Drive where he briefly questioned the confidential source about the details of the transaction. [He] then waited two driveways down and across the street from the house where the delivery was to be made. The confidential source identified the black Honda and the driver as they passed, and [one of the Gwinnett County investigators] informed [the Hall County investigator]. Less than a minute later, [the Hall County investigator] observed the vehicle pull into the driveway of the house specified by the confidential source.

[The Hall County investigator] approached and removed [Nunez-Mendoza] from the vehicle and handcuffed him for officer safety. No one else was in the vehicle. [The investigator] identified himself and asked [Nunez-Mendoza] his name, to which [Nunez-Mendoza] replied "Manuel." He then asked [Nunez-Mendoza] if he had any guns or drugs in the vehicle, to which [Nunez-Mendoza] replied that there were no guns but there were drugs in the vehicle. [The investigator] asked for consent to search the vehicle, and [Nunez-Mendoza] did not respond.

3

[He] entered the vehicle and found four ounces of methamphetamine in a hat in the backseat.

Nunez-Mendoza moved to suppress the physical evidence, arguing that he was arrested at the time he was taken out of his car and placed into handcuffs, yet the confidential source who provided the information leading to his arrest was an untested individual of unknown reliability – akin to an anonymous tipster – whose information could not have provided probable cause to arrest. He asserted, therefore, that his arrest was unlawful, and that the narcotics discovered and seized during the subsequent search of his vehicle were tainted by that illegality and must be suppressed.

Following an evidentiary hearing, the trial court held that Nunez-Mendez was temporarily detained, not arrested, at the time that he was removed from his vehicle. Further, the court held that the information provided by the confidential source in conjunction with the investigators' own personal observations gave rise to a reasonable, articulable suspicion that Nunez-Mendez was engaged in or about to be engaged in criminal activity and, thus, authorized his detention. Finally, the trial court concluded that probable cause to search Nunez-Mendoza's vehicle was established

when he identified himself to the investigator as "Manuel" and admitted to possessing drugs.

The parties' agreed to a stipulated bench trial based upon the facts and circumstances presented in the motion to suppress hearing.[2] The trial court thereafter convicted Nunez-Mendoza of trafficking in methamphetamine in violation of OCGA § 16-13-31 (e),[3] and this appeal follows.

1. Nunez-Mendoza argues that the trial court erred in holding that he was temporarily detained and not arrested at the time he was removed from his vehicle and handcuffed. He further contends that law enforcement lacked probable cause to arrest because the confidential source had no track record from which to determine her credibility.

We need not determine whether the investigator's act of removing Nunez-Mendoza from his vehicle and placing him into handcuffs amounted to a temporary

---

[2] In addition to the facts set forth above, the parties also stipulated that the methamphetamine seized from Nunez-Mendoza's vehicle weighed 111.54 grams and that Nunez-Mendoza admitted to the investigator that the confidential source ordered four ounces of the drug and he intended to sell it for $2,000.

[3] "Except as authorized by this article, any person who sells, delivers, or brings into this state or has possession of 28 grams or more of methamphetamine . . . commits the felony offense of trafficking in methamphetamine. . . ."

detention or an arrest because we conclude, based upon the totality of the information supplied by the confidential source and the events personally observed and corroborated by the investigators as set forth in the trial court's findings of fact, that probable cause to arrest had been established.

> To be sure, a warrantless arrest must be supported by probable cause:

> The legality of a warrantless arrest depends upon whether, at the moment the arrest was made, the officers had probable cause to make it – whether at the moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that a suspect had committed or was committing an offense.

(Citation and punctuation omitted.) *Lopez v. State*, 292 Ga. App. 518, 520 (664 SE2d 866) (2008). "[W]hen probable cause is based, at least in part, upon information supplied by an informant, the State must demonstrate that the information is reliable." (Citation and punctuation omitted). Id. There is not a rigid test with which to judge the reliability of informant information. See id. Rather,

> probable cause is determined by the totality of the circumstances surrounding (1) the basis of the informant's knowledge and (2) the informant's veracity or reliability. A deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability.

6

(Citation and punctuation omitted.) Id.

When, like here, the reliability of a confidential source previously unknown by law enforcement has not been established, that deficiency "can be corrected by the corroboration of the information, thereby providing a substantial basis for finding probable cause." (Citations and punctuation omitted.) *Wiggins v. State*, 331 Ga. App. 447, 451 (771 SE2d 135) (2015). But "for the corroboration to be meaningful, the corroborating information must include a range of details relating to future actions of third parties not easily predicted or similar information not available to the general public." (Citations, punctuation and emphasis omitted.) Id.

In this case, although the confidential source had no prior history with law enforcement officers from which to establish her reliability, the information she provided was such that the investigators were able to corroborate it in a meaningful way. Specifically, the confidential source identified Nunez-Mendoza as a drug supplier by the name of "Manuel"; set up a drug transaction in the presence of the Gwinnett County investigators while they listened to the telephone exchange; offered a description of the make and color of Nunez-Mendoza's vehicles prior to the scheduled drug transaction; and supplied the exact address of the location where the drugs would be delivered. The Gwinnett County investigators were with the

confidential source as she personally identified Nunez-Mendoza and his vehicle –
which matched her prior description – as he passed them en route to the agreed upon
destination. And the Hall County investigator personally observed Nunez-Mendoza,
in the vehicle as described, pull into the driveway of the designated residence.

This information provided by the confidential source included a range of
details related to Nunez-Mendoza's future actions that would not have been easily
predicted or otherwise available to the general public and were meaningfully
corroborated by the investigators; thus, her reliability was sufficiently established.
See *Lopez*, 292 Ga. App. at 520-522 (in addition to making a statement against
interest by identifying his supplier, first-time informant's reliability was established
when he identified in advance the supplier's car, the location at which the car would
be arriving, the gender of the supplier, and the time of the vehicle's arrival, all of
which were then witnessed and corroborated by police); *Merritt v. State*, 329 Ga.
App. 871, 873 (1) (766 SE2d 217) (2014); *Leonard v. State*, 213 Ga. App. 503, 504
(1) (445 SE2d 330) (1994). Compare *State v. Davenport*, 268 Ga. App. 704, 706 (603
SE2d 324) (2004) (holding an informant who "merely pointed out an apartment and
a car . . . but gave no name or description for the alleged drug dealer" was more akin
to an anonymous tipster of insufficient reliability because although the tipster made

8

a phone call purporting to set up a drug deal, the police had no idea who the tipster called, did not see anyone leave the alleged dealer's apartment, had no prior experience with the alleged dealer, and initiated the traffic stop before the alleged dealer made any clear indication that he was driving to the location of the purported drug sale).

These same facts gave the investigators probable cause to arrest Nunez-Mendoza under the totality of these circumstances presented. See *Leonard*, 213 Ga. App. at 504 ("It is well established that neither the basis of an informant's knowledge, nor evidence of his veracity, nor corroboration of these elements is an entirely separate and independent requirement to be exacted in every case, but rather these elements are simply useful in illuminating the common sense, practical question whether there is probable cause to believe that contraband or evidence of a crime is located in a particular place."); *Blitch v. State*, 323 Ga. App. 677, 680 (747 SE2d 863) (2013) (noting that "[the confidential informant] set up the proposed drug transaction under police supervision, and this factor weighed in favor of probable cause that the person coming to supply him with cocaine would have cocaine in that person's possession") (citation and punctuation omitted). Thus, the trial court did not err in denying Nunez-

Mendoza's motion to suppress on the basis of an unlawful arrest.[4] See *Lopez*, 292 Ga. App. at 520-522; *Blitch v. State*, 323 Ga. App. 679-680.

2. Nunez-Mendoza further contends that the trial court erred in denying his motion to suppress because he contends that the search of his vehicle was unlawful. His argument is premised upon the assertion that evidence that would otherwise support a finding of probable cause to search was tainted by his unlawful arrest. As we held in Division 1, however, the investigator had probable cause to arrest Nunez-Mendoza. And his admission to having drugs in the vehicle gave the investigator probable cause to search the vehicle and seize the contraband found therein. See generally *Caffee v. State*, 303 Ga. 557, 558 n.2 (814 SE2d 386) (2018) ("Law enforcement may conduct a warrantless search of a lawfully stopped vehicle where probable cause exists to believe the vehicle contains contraband, and the scope of the search may include any containers in the vehicle that may conceal the object of the

---

[4] See *State v. Austin*, 310 Ga. App. 814, 817 n.10 (714 SE2d 671) (2011) ("A judgment right for any reason will be affirmed.") (citation and punctuation omitted).

search."). Accordingly, Nunez-Mendoza has failed to establish that the trial court erred in denying his motion to suppress.

*Judgment affirmed. Miller, P. J., and Reese, J., concur*.